Edwin J. Nelson and Eugene R. Gann,

*v.*

State of Tennessee.

(*Knoxville,* September Term, 1960.)

Opinion filed December 9, 1960.

W. Corry Smith, Charles W. Lusk, Jr., and Archie Lawrence, Chattanooga, for plaintiffs in error.

David M. Pack, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Plaintiffs in error were indicted and convicted of fraudulent breach of trust and sentenced for a term of not less than three (3) years and not more than five (5) years in the penitentiary. From this conviction they have sea-

sonably appealed, filed assignments of error, briefs and able arguments have been heard. We now have the matter for disposition.

Nelson was the Financial Secretary and Gann was the Treasurer of the United Steel Workers of America, CIO Local No. 3115. In their capacity as such officers, these men, along with the President of the Local, signed all checks which were issued on the account of the Union. The account was carried in a local bank in Chattanooga in such manner so that the signatures of any two of these officers was sufficient for the bank to honor the payment of checks drawn on the Union's account. Beginning in the summer of 1956 and running through January of 1958, Gann and Nelson signed and cashed some eighty-five checks altogether comprising a sum of $6,148.28. Of this total amount, the sum of $3,287.63 was made payable to Gann, and the checks endorsed by him, and the amount of $2,860.65 was made payable to Nelson and these checks were endorsed by him. No single check exceeded or equaled the amount of $100.

As a result of cashing these checks and receiving the funds therefrom, these parties were charged in the indictment of fraudulent breach of trust under our statute, Section 39-4226, T.C.A.

The record shows that it was customary for these officers of this Union to be reimbursed for their loss of time when they were representing the Union in public matters pertaining to the Union, and that they were also reimbursed for expenses incident to attending conventions and meetings of the Union. The International Auditor of the Union, who testified at the trial, stated that the amounts received by these plaintiffs in error were far

in excess of other officers, and that as a consequence of running into the checks above referred to in his audits, he, as the Auditor of the Union, made an audit of the books of the Local. He testified that for these plaintiffs in error to have received this amount of reimbursement as shown by these checks drawn by them on Union funds that they would have incurred six months' loss of time and that this was an impossibility.

The record also shows that when Gann was confronted with this Auditor's findings he signed a statement. Nelson when confronted with the information refused to sign any statement or to make any statement. Out of this factual situation this indictment was brought and the conviction had as above indicated.

The indictment charged that these men on or before January 31, 1958, ''did unlawfully, feloniously and fraudulently appropriate to their own use the sum of $6,148.28 in good and lawful money of the United States of America, the personal property of Local Union 3115, United Steel Workers of America, an unincorporated association'' which had been placed in the hands of these men and which had come into their hands to be used for the purpose of the administration of the affairs of the Union and that these men knowing this when they received the property and in disregard of their duty had ''unlawfully, feloniously and fraudulently converted and appropriated said property to their own use;'' and thus ''did commit fraudulent breach of trust.''

The six assignments of error all hinge on the proper answer to the question of whether or not this appropriation of these funds of the Union, through cashing a series of checks, constituted a single, continuing impulse or

intent pursuant to the execution of a general larcenous scheme?

■■ As far as we can find, or have been cited by able counsel, there is no direct authority in this State, but the general law seems to be in other States that if each taking of these separate checks is the result of a separate independent impulse or intent each taking is a separate crime, but "On the other hand, where it appears that successive takings are actuated by a single, continuing, criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, it has been held or stated that such successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking." 136 A.L.R., 948, 950. In this note the cases pro and con on the question are ably annotated. This annotation further very correctly says that "Whether a series of successive acts of taking constitutes several thefts or one single crime must be determined by the particular facts and circumstances of each case." Page 951.

■ After reading many of the cases cited in the above A.L.R. note and others, we are convinced that the statements above made are sound, correct and should be applied in this State when the facts of a particular case meet those statements. So the question here is whether or not under this indictment the various checks taken by these plaintiffs in error were actuated by a single impulse or scheme whereby these parties could take this money from the Union with the hope of not being detected.

This record bears out beyond question that these plaintiffs in error entered into a common and continuing design and scheme to fraudulently appropriate the funds

of this Union which total the amount that they were indicted for fraudulently appropriating. The plaintiff in error, Gann, admitted such in his signed statement herein, wherein he said he had "discovered a means of embezzling funds from the local union." Such language to us clearly shows or describes an intent to launch forth upon a continuing course of conduct for the purpose of fraudulently appropriating the funds in question. What he says in effect is that he and the other participant in getting the other portion of the checks, the other plaintiff in error, have discovered a means whereby they could obtain these Union funds. It took the two of them to carry out this scheme because the signature of two was required on the checks whereby they got this money. They then by their concerted action could and did appropriate this money from the funds of the Union to their own use. .

Of course, the statement of Gann, which he voluntarily signed, is not admissible as to the plaintiff in error, Nelson, but we can and should, along with the facts to be more fully discussed hereinafter, consider this statement in order to determine clearly from this evidence that these defendants entered into a common and continuing scheme for the purpose of appropriating these funds.

All the evidence shows that it was necessary for all checks to be signed by at least two of the three officers of the Union. Neither of these plaintiffs in error could have singly cashed checks on this fund. It became necessary that two of the three men having that authority sign the checks before they got the money from the bank. Therefore since this group of checks that were introduced, 47 to one man and 48 to the other, which they cashed individually and which checks ran in sequence, in other words Check No. 1 was written to Gann and Check No. 2 to

Nelson (this is a matter of illustration, of course) this to our mind showed that these parties had entered into a conspiracy to fraudulently take money of this Union.

In *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308, we discussed the question of what would constitute a criminal conspiracy and there held that a conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, and the interest of the alleged conspirators, and any other circumstances surrounding these parties; that where two or more people for the purpose of accomplishing a criminal or unlawful act combine together to do something unlawful, either as a means or an ultimate end, it is a conspiracy. The way these checks were cashed, the way they were written and the surrounding facts here clearly would warrant, and demand almost, a jury in finding that the parties had made a conspiracy to do this act prior to its execution.

Another very significant thing is that under this record all checks, which had been issued for legitimate purposes, were countersigned by the President of the Union in addition to the two plaintiffs in error. None of the checks offered to prove this fraudulent breach of trust had been signed by the President, who testified herein, as to these acts and whose testimony lends weight to this fraudulent conspiracy and scheme. Another indication of this scheme occurs to us, which is shown by the evidence, that is, that these checks were written in small amounts, that is amounts less than $100 and in odd cents, which clearly indicates a purpose, and the jury would certainly be warranted in reaching this conclusion, that this was done to try to escape detection and to make the checks look like they were being drawn on this account for a legitimate purpose. This fact likewise shows clearly, as it was

done over a period of time, that this was a continuing scheme and that when each of these checks was drawn it was not just one theft but that they had found a way to do this and were going to continue doing it, as they did until they were caught.

This Court in *Hill v. State,* 159 Tenn. 297, 17 S.W. 2d 913, 914, showed the difference between embezzlement and fraudulent breach of trust, and also showed that they are kindred offenses, but distinct under our statutes. Whether the one offense or the other has been committed is determined by the manner in which the property converted came into the hands of the defendant. In the Hill case this Court made an applicable distinction in language, as follows:

"As we view this case, the transaction, made the basis of the indictment, was not larceny because there was no trespass; it was not embezzlement because the fund was not received from a third party for the employer, but the misappropriation was from the general funds of the employer, over which the defendant alone had control, and falls within section 6580 of Shannon's Code (now Section 39-4226, T.C.A.), which defines fraudulent breach of trust as follows:"

Then follows the quotation of the statute which defines fraudulent breach of trust. This same statute is now, as indicated above, carried in the Code.

We are satisfied that under the facts here, wherein two men who might through their signatures have control of the fund which clearly was the fund of their employer have entered into a scheme to cash checks on money of their employer to each other with the signatures of both on each check, that this clearly amounts to a fraudulent

breach of trust under the statute (Section 39-4226, T.C.A.).

The plaintiffs in error concede that this Court has held as above in the Hill case, supra, but argue that this holding is erroneous, and that we now should reverse the holding in the Hill case. To the contrary, it is our conclusion that the holding in the Hill case is correct, and we now reaffirm the holding of this Court in that case.

■ A very able argument is made on behalf of the plaintiffs in error that the indictment herein is insufficient because it did not state on the face of the indictment that the total amount alleged to have been fraudulently appropriated was made up of these various checks and each check should be listed, because it is said, under *State v. Ferriss,* 71 Tenn, 700, that this indictment does not furnish notice to these parties of what they are to be tried for and that since notice is not furnished them that they are to be tried for each separate check they might again be tried for a larceny under each of these checks. This though we think is an incorrect application of the Ferriss case. Here these plaintiffs in error were indicted for fraudulent breach of trust under a statute, above referred to. This fraudulent breach of trust was made up of a continuing act, as we have pointed out above under the facts, and the total amount of these acts total what was set forth in the indictment. Prior to the indictment both parties were sufficiently apprised of any charges that might be made against them by this Union. This indictment clearly pointed out that this was for fraudulent breach of trust in taking the funds of this Union. Thus is is, as we view it, these parties could not again be tried for the misappropriation of these funds for two or three reasons. One, of course, is that they would be barred by the statute of

limitations as each check came under $100 and would be for petit larceny only, and two is that they were charged with a total offense and then it became incumbent upon the State to prove that this total offense was a scheme or continuing act to set out in the beginning, otherwise they could have been only convicted of a petit larceny. Under the charge of the court, if the jury had believed that these were separate offenses, they could have returned a verdict for a lesser punishment as is provided in the case of petit larceny. The offense of fraudulent breach of trust is punishable as in the case of larceny. (Section 39-4228, T.C.A.).

We have spent several days reading this record and the authorities and considering the matter, which has been very ably presented, and after having done so, we are satisfied that the plaintiffs in error have had a fair trial and that the conclusion of the jury was correct and there is no reversible error in the record. For the reasons stated above the judgment of the trial court must be affirmed.

## On Petition to Rehear

There has been seasonably filed herein a petition to rehear on behalf of the plaintiffs in error, which has been answered by the State. After studying the matter again carefully, we have determined the questions raised by this petition, and now will dispose of the same.

The petitioners have set forth two grounds in their petition to rehear on which a rehearing is requested. The first ground complains that the charge of the trial court did not tell the jury that they were entitled to add the items of the various checks together so as to make these items total more than one hundred ($100) dollars. The

petition frankly concedes that this Court has adopted the majority view when we have held that under an action for a fraudulent breach of trust when the various acts were the consequence of a common design or plan or one impulse and that then the whole of the theft or breach of trust might be considered together.

It is still contended by the plaintiffs in error that the evidence goes no further than to establish separate and distinct larcenies, and insists that where, as here, there are two or more distinct larcenies they cannot be aggregated so as to make the value of the property stolen sufficient to constitute grand larceny. But there is an exception to this rule which we adopted in our original opinion, and it is as well recognized as the rule itself.

Of course, as pointed out by the trial judge in his charge to the jury the punishment for fraudulent breach of trust is the same as for larceny. He then defines petit and grand larceny properly to the jury and properly instructs them on these questions. He leaves it fairly to the jury to determine whether or not these parties should be convicted for only petit larceny without telling them they have the right to aggregate the various small items so as to make it grand larceny. This is what is primarily complained of in the present petition.

We think that it was absolutely unnecessary for the trial court to tell them that they might aggregate these items and if they found the defendants guilty then find them guilty of the fraudulent breach of trust so as to make the offense for which they were found guilty come within the punishment for grand larceny. The jury by its verdict showed that they did so aggregate these items and did find the defendants guilty of fraudulent breach of

trust in an amount exceeding that for which petit larceny is given. This purely presents a factual situation for the jury and the trial court under a case as this where there was proof of these various items, and, as found in our original opinion, the facts clearly showed a conspiracy to do these things over a period of time and well within the statute for fraudulent breach of trust, and thus a fraudulent breach of trust was created which we have heretofore affirmed.

■ The complaint largely is based upon the failure of the trial judge to charge this and petitioners rely particularly on *Crawford v. State,* 44 Tenn. 190, wherein this Court held that it was necessary to charge the full law applicable in a criminal case, even though no special request was presented. We think that any possible error that might have been committed herein by not telling the jury that they could aggregate these various items so as to reach a sum greater than petit larceny, if error at all, was harmless error. If it had been charged, there certainly would have been great contention that this was prejudicial error, because it would in effect tell the jury that these men were guilty of the greater offense rather than the lesser. Upon a careful reading of the charge it is very evident that the plaintiffs in error received the benefit of this charge rather than the burden thereof.

The second argument presented in this petition is largely a reargument of issues heretofore considered by this Court in its original opinion. This second ground largely attacks the sufficiency of the indictment. Section 40-1802, T.C.A., is the Section of the Code stating as to what an indictment must consist of. We think that the indictment herein fairly comes within the provisions of

this Code Section and enables these plaintiffs in error to understand for what they were indicted.

It seems clear to us that even if the statute of limitations had not run on the various items if they had been charged with petit larceny that the indictment as drawn herein clearly covers all of these things and the present indictment and conviction could be plead if they were indicted under these separate items, because the showing is that these items were made up of various items between the dates of June 1, 1956, and January 31, 1958, the period covering all the items. Such being shown on the face of the indictment is of sufficient information within itself to protect the defendants from prosecution of the separate takings of the same monies. That is to say, the offense for which these defendants were convicted is circumscribed by the period of time alleged in the indictment, and a prosecution for taking the same funds in individual instances would be precluded by a plea of a former conviction.

After fully considering the petition to rehear, the authorities cited pro and con, and re-reading the charge of the court, we are well satisfied that there is no prejudicial error herein, consequently the petition to rehear must be denied.