**Wanda SHELL, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 27, 1979.

Certiorari Denied by Supreme Court
May 29, 1979.

James M. Crain, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., William W. Hunt, III, Asst. Atty. Gen., Nashville, John W. Gill, Asst. Dist. Atty. Gen., Knoxville, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant, Wanda Shell, was charged and convicted of violating T.C.A. § 39–4225, which provides that "[i]f a contract of loan for use, or of letting and hiring or other bailment or agency, be used merely as the means of procuring possession of property with an intent to make a fraudulent appropriation at the time, it is larceny." By their verdict, the jury found the defendant guilty of larceny in an amount exceeding $100.00 and set a sentence of four to eight years imprisonment. On appeal, Shell challenges (1) the sufficiency of the convicting evidence, (2) the trial court's failure to dismiss the indictment for lack of certainty, (3) the admissibility of certain evidence at trial, (4) the propriety of the district attorney's conduct, and (5) the trial judge's failure to give a requested jury instruction. We find no reversible error, and, accordingly, we affirm the conviction.

The State established at trial that during the period charged in the indictment, Wanda Shell was an employee of the Knox County Welfare Department, a short-term "emergency" agency not connected with the State Department of Welfare. The county welfare office provides temporary assistance to those in need, generally in the form of small payments for utility bills, rent, gasoline, food, clothes, etc. When the prospective welfare client is found to be ineligible for county funds, the welfare worker assigned to the case can refer the client to private charitable agencies, including local churches. One such participating church was the Fountain City United Methodist Church, which made frequent donations from its Pastor's Discretionary Fund upon request from local welfare workers.

An official of the Fountain City Church testified that whenever possible church donations were handled by check made payable and mailed directly to the utility company or landlord involved. However, Ms. Shell had told church officials that the local food stamp office would not accept checks, so they set up a procedure whereby the church would make checks payable directly to her, marking the purpose of the donation on the face of the check, e. g. "Kenneth Gordon—Food Stamps." A list of such checks was introduced at trial; it contained the names of some 40 intended recipients, and represented a total expenditure by the Fountain City Church of over $800.00. A supervisor in the county welfare office, Vicki Swan, was permitted to testify from department files that the great majority of these 40 persons had not requested assistance in the purchase of food stamps; indeed, most of them were already food stamp recipients, many at no cost to themselves ("zero purchase"). When a welfare client needed food, the welfare worker usually issued a voucher which could be presented at a certain local grocery store. The information from relevant department records introduced at trial reflected only one request for food stamp assistance, on that occasion the welfare department wrote a check directly to the food stamp office on behalf of the client.

Several of the 40 welfare recipients whose names appeared on the Fountain City Church list testified for the State at trial. None of them had requested money to purchase food stamps, nor had they received any cash from the defendant for that or any other purpose. The total amount received by Ms. Shell from the church, purportedly for the use of these individual

clients, was some $112.00. (A witness called by the defendant testified that she had received money from Shell for the purchase of food stamps, but the name and address of this witness does not match the name and address of the listed person whom she claimed to be.)

In her own defense, Shell testified that she often operated outside department procedures in attempting to help those not otherwise qualified for assistance. She claimed no memory of her dealings with the particular individuals who testified for the State.

 The defendant now concedes that there was sufficient evidence to convict of petit larceny, but claims that the State failed to rebut every hypothesis except her guilt with regard to two of the individual welfare clients who testified at trial. Shell insists that the sum of $112.00 must be reduced by the amount of the checks made out to her for their benefit, resulting in a total amount of less than $100.00. We find no merit to this argument. The question was one for the jury to determine, and the evidence does not preponderate against their verdict, as would be necessary to justify a reversal on appeal. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978). We therefore overrule the related assignments of error.

The defendant next challenges the sufficiency of the indictment in this case. That instrument charged that Shell

> unlawfully, feloniously and fraudulently by agency and bailment did obtain a quantity of good and lawful money . . exceeding the value of $100.00 . . . [by] merely using said agency and bailment as a means of procuring possession of the said money from the said Fountain City United Methodist Church, with the intent . . . to make a fraudulent appropriation at that time and she . . did take, convert and appropriate said money to her own use and benefit, as part of a continuous larcenous scheme, in violation of T.C.A. § 39–4225. . . .

 The defendant alleges that the indictment is not sufficiently certain because it does not charge the individual transac-

tions that were later proven by the State. However, the law of Tennessee does not require that the indictment furnish notice of individual acts of larceny "where it appears that successive takings are actuated by a single, continuing, criminal impulse or intent or are pursuant to the execution of a general larcenous scheme." *Nelson v. State*, 208 Tenn. 179, 344 S.W.2d 540, 542 (1960). In such a case, according to the *Nelson* court, the "successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking," and the indictment need not charge the individual acts, but only the aggregate amount involved. *Id.*, 344 S.W.2d at 542, 544. It is abundantly clear from this record that such a continuing larcenous scheme was both charged and proved to the jury's satisfaction. Nor was there any basis upon which to grant the defendant's motion for a bill of particulars, that procedure being unknown to Tennessee law at the time of this trial. There was no error in connection with the indictment, and the related assignments must therefore be overruled.

The defendant next raises multiple assignments of error regarding the introduction of records tending to show the existence of the 40 or more checks made payable to Shell by the church, when the State proved in only a handful of cases that the funds represented by the checks had not reached the intended recipients. The trial judge ruled that unless the intended recipients took the stand and denied receipt of the funds, the State had failed to make out a case as to those particular checks and they could not be aggregated by the jury for purposes of determining Shell's guilt. The defendant insists that no evidence of the extraneous checks should have been permitted to reach the jury.

 Without regard to the correctness of the trial court's ruling on this question, an issue which is not before us on appeal since any error accrued to the defendant's benefit, we think it is clear that the evidence in question, *i. e.*, numerous checks purportedly

for the purchase of food stamps and records showing that no requests for such assistance were made by the individuals named on those checks, was relevant and admissible to prove the existence of a common scheme or design with regard to those checks which were the subject of witness testimony. We therefore find no error in connection with the introduction of the checks or with the introduction of welfare department records concerning them, and we thus overrule the related assignments of error.

Nor did the court err in permitting Ms. Swan to summarize the contents of those records following the State's offer to introduce the individual files as exhibits to her testimony. *State ex rel. Stewart v. Follis*, 140 Tenn. 513, 205 S.W. 444 (1918); *Evans v. Boggs*, 35 Tenn.App. 354, 245 S.W.2d 641 (1952); D. Paine, *Tennessee Law of Evidence* § 232 (1974). Moreover, the record fails to substantiate the defendant's claim that items were taken from these files prior to trial, making them improper reflections of true department records. These assignments must be therefore overruled.

Furthermore, the trial court did not err in limiting testimony regarding Ms. Swan's knowledge of "political influence" dealings in the welfare department. This line of questioning was irrelevant, even as impeachment of Swan's testimony regarding departmental files and her motive to falsify the records. The related assignment is therefore overruled.

The record fails to indicate any improper conduct by the assistant district attorney, other than his understandable persistence in attempting to press his case with regard to all the checks offered into evidence. Measured by relevant standards, his conduct did not so infect the trial as to deprive the defendant of a fair hearing. See generally *Judge v. State*, 539 S.W.2d 340 (Tenn.Cr.App.1976).

Finally, the defendant challenges the trial court's denial of her special request for a jury instruction. That request cover-ed the standard of reasonable doubt in somewhat more precise and particular details than that used by the trial judge in his charge to the jury. Nevertheless, the instruction given by the court was a correct statement of Tennessee law, and it adequately covered the subject matter contained in the special request. It follows that the trial judge committed no error in declining to give the requested charge, *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976), and the related assignment must therefore be overruled.

The judgment of the trial court is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.