STATE of Tennessee, Appellee,

v.

Donald R. O'GUIN, Appellant.

Court of Criminal Appeals of Tennessee
at Nashville.

Feb. 24, 1982.

On Petition to Rehear March 31, 1982.

Permission to Appeal Denied by
Supreme Court Nov. 8, 1982.

James G. Stranch, III, Cecil D. Branstetter, Branch H. Henard, III, Philip M. Carden, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Weakley E. Barnard, Ronald E. Miller, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

DWYER, Judge.

Appellant stands convicted of six counts of larceny over the value of $100 by fraudulent appropriation, T.C.A. § 39–4224, with the resulting concurrent punishment of not less than three nor more than five years on each count. His sentence was suspended for all but thirty days confinement in the workhouse. Numerous issues and sub-issues have been presented, one of which challenges the sufficiency of the evidence. This prompts our narration of that evidence as found from our review of the voluminous record.

Appellant Donald O'Guin was the president and chairman of the board of Mutual Insurance Company, hereafter referred to as Mutual. He also presided over First American Holding Company which was the parent company of American Auto Camper and Mobile Home Center. We will refer to the latter as Auto Camper. Auto Camper leased cars to Mutual Insurance Company. It was also stipulated that the appellant owned 85 or 90 percent of the stock in American Holding Company and all the stock of Auto Camper. In short, as advanced by the State, he was Auto Camper.

In the course of business, Mutual acquired wrecked automobiles from its policy-

holders.[1] A Mr. Frank Parham d/b/a Frank's Auto Parts testified for the State that around April 24, 1975, he purchased eight cars from the appellant for $4,000. The following eight cars became the basis for separate counts in the indictment.[2]:

A 1973 Ford Econoline, VIN E15GHO325751;

A 1973 white Chevrolet Nova, VIN IX17H3W151870;

A 1973 red Chevrolet Nova, VIN X17H3W109947;

A 1972 blue Chevrolet Nova, VIN IX27F2W342;

A 1968 gold Chevrolet Nova, VIN II3278W258006;

A Ford Cortina, VIN BA92HA60856;

A 1973 Ford white LTD, VIN 3U685164998;

A 1974 red Chevrolet Corvette, VIN 1Z37J45419620.

At the appellant's request Mr. Parham made the check payable to Auto Camper.

Earlier in the month Parham had purchased other cars from Mutual. When inquiries were made relative to the above mentioned cars, a Mr. Tant, an employee of Mutual, told Mr. Parham he would have to see the appellant about buying those cars.

A Mr. Smith, an insurance examiner with the Department of Insurance, testified that the indictment vehicles in question had been purchased by Mutual. His examination of the accounting books failed to show that Mutual received the $4,000 which Mr. Parham paid to Auto Camper. In other words, appellant sold the eight cars to Parham, had the check made payable to Auto Camper, endorsed this check and deposited it in Auto Camper's account.

The State also developed proof that the bank account for Auto Camper was over-

drawn on April 24, 1975, in the amount of $3,412.46. The $4,000 check which was deposited on April 25, 1975, provided the account with sufficient funds. At the close of the State's proof, the appellant's motion for judgment of acquittal as to count 7 was sustained.[3]

A former member of the board of directors for Mutual, testifying for the defense, related that appellant was authorized as president of Auto Camper to handle salvage for Mutual.

The appellant testified that his initial meeting with Mr. Parham occurred on April 3, 1975, at which time he sold Parham nine cars, five owned by Mutual and four belonging to American Holding Corporation and Auto Camper.

An office memorandum was introduced by the appellant dated April 3, 1975, which reflected that five cars had been sold as salvage and Mutual should be credited with $2,454.98. An invoice numbered 0018 was also introduced which reflected that credit was given Mutual from American Auto Camper for the transaction. This invoice reflected the date of April 7, 1975. The appellant also related that his next encounter with Mr. Parham occurred on April 24, 1975, when the titles were transferred and $4,000 was paid.

When cross examined, the appellant acknowledged that the four automobiles owned by Auto Camper and American Holding were not listed in the seven-count indictment. It was also developed that no other invoices to Mutual from Auto Camper were located by the appellant for 1975.

The State produced a different type invoice numbered 0018 from Auto Camper to a third party which reflected the sale of a mobile home. Appellant attempted to explain this inconsistency by stating that in-

---

1. If the damage to the insured's car exceed seventy-five percent of the market value of the car, then the car is deemed a total loss and the insured is reimbursed for the car and the salvage car is acquired by the insurance company.

2. The trial court granted the State's motion to strike count three of the indictment before trial.

3. Mutual did not acquire title to this automobile until after April 24, 1975.

ventory items required stamped invoices whereas invoices for non-inventory items were typewritten.

In rebuttal, the State recalled Mr. Kenneth Smith who testified that unlike the other invoices from Auto Camper to Mutual, number 0018 introduced by the appellant showing $2,820.91 rental due did not reflect the particular cars which were being leased as required by law.

Mr. Parham testified that he never met the appellant until April 24, 1975, and approximately six weeks passed before he received the titles on the cars that were purchased. His first encounter with Mr. Tant, the authorized agent, occurred no more than five working days before April 14, 1975.

We have come a long way to explain thousands of words of testimony. The trial lasted eight days with only seven or eight witnesses testifying. In all candor, from our review, when these witnesses concluded their testimony every bit of knowledge they had of the facts had been fully explored and developed.

In a nutshell, the evidence may thus be summed up. The appellant sold Mr. Parham on April 24, 1975, eight cars that were salvage and belonging to Mutual. The appellant sold these cars to Mr. Parham and had the check endorsed to Auto Camper and deposited in that company's bank account. Any asset of Mutual not going to that company was a loss to the policyholders of that company. The State's proof showed that the money, through the examination of the books of Mutual and Auto Camper, did not reflect a "set-off" against what Mutual owed Auto Camper for car rentals. The appellant produced an invoice which showed that Mutual was given credit for the sale of the cars. In short, the jury just did not believe the appellant's proof and accordingly rejected his theory with an accompanying credit of the State's proof and its theory.

The following well-established principles of law play a pivotal role in the resolution of the evidence issue. The jury by its verdict has reconciled the inconsistencies in the testimony and on appeal the State is entitled to the strongest legitimate view of the trial evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The appellant now has the burden to demonstrate that the evidence preponderates against the jury verdict. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973).

The appellant, with reliance on *Brown v. State,* 162 Tenn. 639, 39 S.W.2d 746 (1931), submits that in light of the proof that he possessed authority to dispose of the automobiles in his capacity as an officer of Mutual, the evidence, at most, suggests that the appellant fraudulently appropriated or embezzled the proceeds from the sale of the automobiles; therefore, it is appellant's position that he stands convicted of a crime for which he had never been charged.

The State counters, arguing that the appellant was not in legal possession of the vehicles. The relevant section of the statutes reads as follows:

"A fraudulent appropriation of property by any person to whose charge or care it is delivered, subject to the immediate orders of the owner, or to the use of it in his presence, or for the purpose of his trade, is larceny."

Our Supreme Court in distinguishing larceny and embezzlement has said:

"If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny." *State v. Matthews,* 143 Tenn. 463, 468, 226 S.W. 203 (1920).

With the evidence reflecting that the automobiles in question came into Mutual's possession and that an authorized agent (Tant) was prohibited from making the sale, the jury could and did infer that the appellant fraudulently appropriated the automobiles of Mutual for his own gain. This is bolstered by proof in the record that appel-

lant sold the cars to Mr. Parham, had the check made payable to Auto Camper and deposited the $4,000 in that account.

■ We find merit in appellant's urging that his six larceny convictions cannot stand. The automobiles in question came into Mutual's possession at different intervals. As noted in *Nelson v. State,* 208 Tenn. 179, 344 S.W.2d 540 (1960):

> "If successive takings are actuated by a single, continuing, criminal impulse or intent or are pursuant to execution of a general larcenous scheme, the successive takings constitute a single larceny regardless of lapse of time between each taking."

In finding that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we hold that the evidence is sufficient to support appellant's conviction as to count one of the indictment and reverse and dismiss the remaining convictions.

■ Various challenges have been made regarding the jury charge, among other things the trial court's failure to instruct the jury on the elements of criminal fraud, the requisite intent necessary for conviction, set-offs, and a proper instruction regarding the doctrine of reasonable doubt. The charge as given fully and fairly states the applicable law. See T.P.I.-Crim. § 2807. This issue is overruled.

■ Next, appellant avers that each count on the indictment charges more than one criminal offense. The State focuses on T.C.A. § 40–1806 and submits that since the offense may be committed by different means, such means may be alleged in the same count in the alternative. We agree with the State. See *State v. Jefferson,* 529 S.W.2d 674, 678 (Tenn.1975). This issue is overruled.

■ The seizure of Mutual's records has been placed in issue. An *ex parte* order had been issued allowing the State agents to seize the records of Mutual and other com-

panies. When this was served, appellant called his attorney who requested a hearing on the order. During the motion to suppress, it was developed that the attorney for the appellant agreed to furnish the records if the seizure order was dissolved. The appellant spoke up at that discussion and stated, "We will furnish you with all of the records and make you copies of the ones we need for current operation." The trial court found from the evidence that the appellant had consented to furnishing the records. The evidence supports his findings. This issue is overruled.

■ Appellant takes issue with the trial court's allowance of rebuttal evidence. Keeping in mind that:

> ". . . any competent evidence which explains or is a direct reply to, or a contradiction of, material evidence introduced by the accused, or which is brought out on his cross examination is admissible in rebuttal, see *Nease v. State,* 592 S.W.2d 327, 331 (Tenn.Cr.App.1979),"

we do not find an abuse of discretion by the trial court in allowing the testimony. This issue is overruled.

■ Appellant sought a new trial on the basis of newly discovered evidence. Affidavits were presented which bolstered the appellant's version of the dates of Mr. Parham's earliest dealings with the cars and as to his explanation of the different series of numbered invoices.

In matters of this kind the trial court will not be reversed absent a clear abuse of discretion. See *Jones v. State,* 519 S.W.2d 398, 400 (Tenn.Cr.App.1974). As the State correctly submits, the newly discovered evidence would have only contradicted or impeached evidence adduced at trial. See *State v. Hill,* 598 S.W.2d 815, 821 (Tenn.Cr. App.1980). We find no error here.

■ Next, appellant says that the indictment did not properly advise him of the nature and cause of the accusations lodged against him. Earlier, for issue, the appel-

lant stated the counts contained two offenses, hence, duplicitous. There is no merit in this issue.

The indictment has also been challenged on various other grounds: (1) improper prosecutor listed and (2) improper certification by the grand jury.

■ Appellant reasons that an employee of the State (Mr. Smith) is an improper prosecutor, see T.C.A. § 40–1704, because of the doctrine of sovereign immunity which prevents him from being sued for groundless prosecutions. The State points out that at the time the indictment was referred to the grand jury, Mr. Smith had been appointed as receiver and conservator of Mutual, representing the policyholders who were the victims of this crime. Recourse was available to the appellant. We find no error here.

■ While the indictment indicates that the witnesses were sworn during open court and sent before the grand jury, the month and day of the year were omitted. The indictment was received by the clerk of the Criminal Court of Davidson County on October 31, 1977. Under these circumstances, the improper certification by the foreman of the grand jury was not fatal.

■ Appellant complains that the State withheld or improperly and prejudicially delayed disclosure of evidence which had been requested. Our examination of the record produced a contrary finding. This issue is overruled.

■ With the court having given appellant all the criteria of *Stiller v. State,* 516 S.W.2d 617 (Tenn.1974), and considering the whole record, appellant's twenty-one witnesses, the probation report, and finally, suspending all but thirty days of the sentence, we would be hard pressed to hold that the trial court abused its discretion in denying full probation to the appellant. This issue is overruled.

The judgment of the trial court is affirmed as modified.

O'BRIEN and BYERS, JJ., concur.

## OPINION ON PETITION TO REHEAR

A petition to rehear has been timely filed in this cause, T.R.A.P. 39.

The appellant is aggrieved by our treatment of his issues as to the indictment, the search, and suspension of sentence in our opinion affirming his conviction.

His petition and request for oral argument, T.R.A.P. 39(d), have been considered. The petition is denied.