# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 3, 2004

## STATE OF TENNESSEE v. CEDRIC ANTHONY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-01482     Chris Craft, Judge**

---

**No. W2004-00255-CCA-MR3-CD  - Filed December 10, 2004**

---

Defendant, Cedric Anthony, was indicted in count one for the aggravated robbery of Teresa Stegall, in count two for the aggravated robbery of Regina Davis, in count three for the aggravated robbery of Antoinette Hubbard, and in count four for the aggravated robbery of Leslie Ross.  Following a jury trial, Defendant was convicted of all four counts of aggravated robbery and sentenced to eight years for each offense.  The trial court ordered Defendant's sentences for counts two, three, and four to be served concurrently, and his sentence for count one to be served consecutively to the other counts for an effective sentence of sixteen years.  Defendant does not appeal the sufficiency of the convicting evidence but argues that his aggravated robbery convictions in counts three and four violate the principles of double jeopardy. Defendant does not argue on appeal that his conviction in count two of the aggravated robbery of Ms. Davis raises double jeopardy concerns. Defendant also argues that the trial court erred in ordering his sentence for count one, aggravated robbery, to be served consecutively to the other sentences.  Since the filing of the briefs, Defendant has also asked us to consider the impact of the ruling in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004) on his sentences.  After a thorough review of the record, we affirm Defendant's convictions for aggravated robbery in counts one and two.  Because the facts and circumstances supporting the offenses in counts one, three, and four support only one conviction for aggravated robbery, we modify Defendant's convictions for aggravated robbery in counts three and four to aggravated assault. We remand Defendant's convictions in counts three and four for resentencing during which the trial court may only consider Defendant's prior convictions as an enhancement factor under *Blakely*.  We affirm Defendant's convictions for aggravated robbery in counts one and two, and affirm the trial court's imposition of consecutive sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed as Modified;**
**Remanded for Resentencing for Convictions of Counts Three and Four**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Robert Wilson Jones, District Public Defender; Garland Erguden, Assistant Public Defender; Trent Hall, Assistant Public Defender; and Cathy Hailey, Assistant Public Defender, for the appellant, Cedric Anthony.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen Baity, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Teresa Stegall was working as a cashier at a Big Star grocery store in Memphis, Tennessee, when two African-American men entered the store around 5:00 p.m. One of the men approached Ms. Stegall, pointed a gun at her, and ordered her to open her cash register. The man grabbed some money from the register. He then removed cash from the cash register located next to Ms. Stegall's which was operated by Antoinette Hubbard. The man also took money from a customer whom Ms. Stegall had been assisting prior to the robbery. Ms. Stegall said that a second man approached Leslie Ross, who was working at the store's customer service desk, and pointed a gun at her. The customer service desk was located about fifteen to twenty feet away from Ms. Stegall's cash register. The two perpetrators left the store through the front door. One of the men fired two gunshots at the door as he left.

Ms. Stegall said that the two men were in their twenties. The man who robbed Ms. Stegall was tall and wore dark jeans, a striped shirt, and a bandana over his face. Ms. Stegall said that the man also wore a hat so that only his eyes were visible. Ms. Stegall said that she could not identify Defendant as the man who robbed her.

Regina Davis testified that she was paying for her groceries at Ms. Stegall's cash register when the two men entered the store. One of the men turned toward the customer service desk, and the other came to the check-out area and demanded that Ms. Stegall give him the cash in her cash register. Ms. Davis described the man who robbed her as in his early to mid-twenties, thin, and around five feet nine inches tall. Ms. Davis said that the perpetrator wore a striped polo shirt, a beige paisley bandana over his face, and carried an automatic gun. The man grabbed some money out of Ms. Davis' hand and demanded her purse. Ms. Davis slid her purse over the counter, and the man removed some cash. Ms. Davis said that the other man wore dark clothes and a ski mask. Both men left by the front door. One of the men fired two shots at the door as he left.

Antoinette Hubbard was working at the second cash register. The man who robbed her cash register was carrying a weapon, but Ms. Hubbard could not identify the type of gun. Ms. Hubbard said that she did not think the man who robbed her was wearing a mask, but agreed that one of the men fired two gunshots at the store's front door. Ms. Hubbard said that the robber did not take any of her personal belongings. She could not identify Defendant as the man who robbed her cash register.

Leslie Ross said that one of the men approached her customer service counter and demanded that she open the cash register that was behind the counter. After she opened the cash drawer, the man grabbed some money. He was carrying a gun with a silver barrel and black handle. The

perpetrator wore latex gloves. Ms. Ross said that the man who robbed Ms. Stegall's and Ms. Hubbard's cash registers was wearing a horizontally striped shirt. Ms. Ross said that none of her personal belongings were taken during the robbery. Ms. Ross also heard two gunshots after the men had left the store.

William Warren had just entered the grocery store when he saw an armed man at one of the cash registers. He turned around and left the store and got back into a friend's truck. When his friend drove around to the front of the store, Mr. Warren saw two men running down the street. Mr. Warren and his friend followed the men until they lost sight of them. When Mr. Warren got out of the truck, he spotted the two men again and yelled at them. Mr. Warren said that the men threw some items in the bushes near a house on Gibbons Place.

John Chevalier, an officer with the Memphis Police Department, responded to the call about the robbery at Big Star. When he arrived at the store, some bystanders pointed out two men running away from the grocery store. Officer Chevalier chased the men until they were apprehended.

Sergeant Joe Edward Stark said that he dusted the grocery store's front door for fingerprints, but did not find any. Two .22 caliber shell casings were discovered just outside the front door. Police officers had retrieved two guns and a black hat with holes cut out for the wearer's eyes by the time Sergeant Stark arrived at the house on Gibbons Place. The police later found a long-sleeved, multi-colored shirt and a bandana hidden in a barbeque grill behind a house on Sellers Street. The police also found a check made out to "Big Star," various sales receipts with the name of the store, some cash and a pair of latex gloves in the vicinity of the Sellers Street house.

Sergeant Walter Lee Williams, Jr. took Defendant's statement after he was transported to the Memphis Police Department. Sergeant Williams advised Defendant of his *Miranda* rights and testified that Defendant appeared to understand the process. In his statement, Defendant confessed that he committed the robbery. He said that a friend drove him and his brother, Sean Anthony, to the Big Star grocery store. Defendant said that his brother was wearing a gray shirt and black hat pulled down over his face and carried a .22 caliber Smith and Wesson revolver. Defendant said that he wore a blue tee-shirt and a bandana over the lower half of his face and was armed with a .22 caliber semi-automatic Smith and Wesson. Defendant said that he took the money out of the two cash registers at the front of the store while his brother took the money out of the cash register located at the customer service desk. Defendant said that he also took some money from a customer standing at the first cash register. Defendant said that he put his shirt and bandana in a brick barbecue grill behind a house. Defendant said that he tripped on the way out of the grocery store, and his gun discharged twice.

## II. Double Jeopardy

Defendant does not challenge his convictions in counts one and two for the aggravated robberies of Teresa Stegall and the customer, Regina Davis. Relying on *State v. Franklin*, 130 S.W.3d 789 (Tenn. Crim. App. 2003), Defendant argues, however, that the convictions for the

aggravated robbery of Ms. Hubbard and Ms. Ross violate double jeopardy provisions. Defendant contends that the evidence supports only a single robbery connected to the theft from the Big Star grocery store. He argues that his other two convictions for aggravated robbery should be modified to aggravated assault as a lesser included offense of aggravated robbery. The State, on the other hand, argues that Defendant's conduct constituted three separate "takings" which survive a double jeopardy challenge.

The State initially argues that Defendant has waived consideration of his double jeopardy issue on appeal because he failed to raise this issue in his motion for new trial. *See* Tenn. R. App. P. 3(e). Nevertheless, we choose to address this issue on its merits. Tenn. R. Crim. P. 52(b); *see also State v. Lewis*, 958 S.W.2d 736 (Tenn. 1997) (citing *State v. Goins*, 705 S.W.2d 648, 650 (Tenn. 1986)); *State v. Epps*, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998)(applying plain error doctrine to review whether the defendant's dual convictions violated double jeopardy principles).

Both our federal and state constitutions prohibit persons from being "twice put in jeopardy" for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. "This prohibition against 'double jeopardy provides protection from three evils: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." *Franklin*, 130 S.W.3d at 797 (citing *Lewis,* 958 S.W.2d at 738).

In *Franklin*, the owner of an Amoco market and his employee were working behind the sales counter when the defendant and the co-defendant entered the store. The defendant, brandishing a handgun, went behind the counter and ordered the store's owner to open the cash register. The defendant took the money from the cash register. He then told the owner and his employee to go into the market's restroom, and the two perpetrators left the store. Defendant was later convicted of two counts of aggravated robbery. *Franklin*, 130 S.W.3d at 791. Although the State pursued dual convictions under the theory that two employees had been threatened with a handgun, a panel of this court concluded that the defendants had committed a single theft from the Amoco market, and therefore only one aggravated robbery. *Id.* at 798.

The *Franklin* court observed that

Tennessee's legislature has defined robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Thus, Tennessee's robbery statute is defined in terms of "theft." "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id*. § 39-14-103. Our supreme court has recognized that, "[t]he element which distinguishes robbery from theft is the use of violence or fear." *State v. Owens*, 20 S.W.3d 634, 638 (Tenn. 2000). "Therefore, whether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed." *Id.* Indeed, Tennessee courts have frequently characterized the crime of robbery as "'an aggravated form of larceny.'" *See, e.g.,*

-4-

> *State v. Winsett*, 217 Tenn. 564, 399 S.W.2d 741, 742 (Tenn. 1965) (quoting 54 C.J.
> 1010); *Freeman v. State*, 520 S.W.2d 739, 741 (Tenn. Crim. App. 1974).

*Franklin*, 130 S.W.3d at 796.

> The *Franklin* court thus concluded that,

> Tennessee appears to distinguish robbery from theft on the basis of the *method* of the
> taking, rather than on the basis of from whom the property is taken. "It is violence
> that makes robbery an offense of greater atrocity than larceny." *Winsett*, 399 S.W.2d,
> at 743. The method of the taking remains unaffected by the number of persons who
> may be threatened during the crime. Accordingly, we hold that the proper unit of
> prosecution for robbery in Tennessee is the number of takings, i.e. the number of
> thefts.

*Franklin*, 130 S.W.3d at 796-97.

Thus, the question presented in the case *sub judice* is how many thefts occurred at the Big Star grocery store, involving employees of the store. (As noted above, Defendant concedes that the offense committed against the customer constituted a separate theft, and therefore a separate aggravated robbery.) In *Epps*, Elizabeth Franklin returned home from a shopping trip and discovered that someone had entered the house through a broken window. Mrs. Franklin determined that a .38 pistol was missing from her dresser drawer and that the perpetrator(s) had also taken a .20 gauge shotgun, a .38 long barrel pistol, and a Winchester rifle. *Epps*, 989 S.W.2d at 743. There was also evidence that the perpetrator(s) had attempted to steal Mrs. Franklin's automobile. Based on these facts, the defendant was convicted of one count of aggravated burglary, one count of theft of property over $1,000 and one count of attempted theft of property over $1,000. Although not raised in the trial court, this Court concluded, as plain error, that the defendant's convictions for both theft and attempted theft violated double jeopardy principles. *Id.* at 745. "Specifically, the proof established that the offenses of theft and attempted theft arose from a single criminal episode, involved the property of one victim, and both occurred at the same location." *Id.*

The *Epps* court noted that "[t]he issue of multiple punishments arising from a single criminal episode was addressed by our supreme court in *State v. Phillips*, 924 S.W.2d 662 (Tenn. 1996)." *Id.* The supreme court, in *Phillips,* outlined the general principles involved in determining when offenses are multiplicitous:

1.    A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

2.    If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

3.  Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Phillips*, 924 S.W.2d at 665.  "Additional factors such as the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment may be considered for guidance in determining whether the multiple convictions violate double jeopardy."  *Epps*, 989 S.W.2d at 745 (citing *Phillips*, 924 S.W.2d at 665).  With these principles in mind, the *Epps* court analyzed,

> Again, the conduct at issue involves the theft of property and attempted theft of property from the premises of Elizabeth Franklin.  There is no dispute that the four weapons taken from inside the home and the automobile, parked under the shed, were the property of Elizabeth Franklin.  Where several articles are stolen from the same owner at the same time and place, only a single crime is committed.  *See* 52A C.J.S. *Larceny* § 53 (1968); *see also Nelson v. State*, 208 Tenn. 179, 344 S.W.2d 540, 542 (1960); *People v. Timmons*, 233 Ill. App. 3d 591, 174 Ill. Dec. 616, 599 N.E.2d 162, 165 (2 Dist. 1992); *Holt v. State*, 178 Ind. App. 631, 383 N.E.2d 467, 472 (1978).  *Cf. State v. Byrd*, 968 S.W.2d 290 (Tenn. 1998) (holding that theft offenses may be aggregated into one single charge when the separate larcenous acts are from the same location, and pursuant to a continuing criminal impulse); *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997) (holding that act of setting apartment building on fire was single action and double jeopardy prohibits separate convictions for each apartment destroyed).  Whether the acts of the defendant constitute several thefts or one single crime must be determined by the facts and circumstances of each case.  *Id.*  If each taking is the result of a separate intent, each is a separate crime; however, where the takings are all pursuant to a single intent, there is but a single larceny.  *Id. See also Phillips*, 924 S.W.2d at 665.  It is of no consequence whether the taking is completed, or, but, a mere attempt.  *See Dellenbach v. State*, 508 N.E.2d 1309, 1314 (Ind. App. 3 Dist. 1987).  *Cf.* AMERICAN LAW INSTITUTE, MODEL PENAL CODE § 223.1(2)(c) & Comment (1980).

*Epps*, 989 S.W.2d at 745-46.

In *State v. Pauli*, No. M2002-01607-CCA-R3-CD, 2003 WL 21302991 (Tenn. Crim. App., Nashville, June 5, 2003), *perm. to appeal denied* (Tenn. Oct. 27, 2003), the defendant, among other charges, was initially charged with sixteen counts of theft of property over $60,000.  The charges related to a series of invoices, issued over a span of nearly four months, which documented sales of products from the defendant's company, AKO-ISMET, to KMS, an unrelated company.  The defendant, an employee of AKO-ISMET, purchased products from AKO-ISMET and sold them to KMS at unauthorized prices without the knowledge of AKO-ISMET.  Testimony at trial established that the losses, based upon the difference between the authorized price of the products and the actual sales price to KMS, exceeded $60,000 per invoice.  *Id.*, 2003 WL 21302991, at *10.  In its amended

bill of particulars, the State aggregated the sixteen theft counts into three charges of theft of property over $60,000. The first count included invoices dated between April 24 to May 19, 1998; the second count included invoices dated between June 9 to August 12, 1998; and the third count included invoices dated between August 26 to September 18, 1998. The jury subsequently found the defendant guilty, among other offenses, of the three counts of theft of property over $60,000.

Although not raised on appeal, a panel of this Court addressed the double jeopardy issues implicated by the defendant's three theft convictions. Utilizing the principles enunciated in *Phillips*, this Court concluded that "the three separate convictions for theft over $60,000 was plain error and violated the prohibition against double jeopardy. The acts upon which the convictions were based arose from a single criminal episode, involved the same victim, and occurred at the same location. Therefore, the acts constituted only one offense of theft." *Pauli*, 2003 WL 21302991, at *15 (citation omitted).

Turning to the instant case, the evidence showed that Defendant and his brother, Sean Anthony, entered the Big Star grocery store at the same time and proceeded to separate cash registers in the same general location of the store, evidencing an intent to rob all three cash registers simultaneously. Sean Anthony went to the customer service area, brandished a gun over the counter at Ms. Ross, and then reached behind the counter to remove money from her cash register after Ms. Ross opened the cash drawer. Defendant admitted that at the same time, he went to the cash registers near the front door and told each employee to open her cash register. He first removed the cash from Ms. Stegall's register and then the cash from Ms. Hubbard's register. Defendant and his brother both exited the store at the same time through the front door.

Based on these facts presented in this case, we conclude that Defendant's three convictions for aggravated robbery based upon the robbery of each of the store's three employees violates the prohibition against double jeopardy. The acts upon which the convictions were based occurred at the same time and location and represented a single criminal episode with a single criminal intent to rob the cash registers within the reach of the two perpetrators and then escape from the premises. *See Franklin,* 130 S.W.3d at 798; *Epps*, 989 S.W.2d at 745-46.

Accordingly, as required by double jeopardy principles, we reverse Defendant's convictions for aggravated robbery in counts three and four. That is not to say, however, that Defendant is not guilty of an offense against Ms. Hubbard and Ms. Ross. *See Franklin*, 130 S.W.3d at 798. A person who intentionally or knowingly displays a gun to another, and thereby causes the other to reasonably fear imminent bodily injury, has committed an aggravated assault. Tenn. Code Ann. § 39-13-102(a)(10)(B). Both Ms. Ross and Ms. Hubbard testified that Defendant brandished a gun during the robbery, and that they were afraid. Aggravated assault is a lesser included offense of aggravated robbery. *See State v. Jason C. Carter*, No. M1998-CCA-R3-CD, 2000 WL 515930, at *8 (Tenn. Crim. App., Nashville, Apr. 27, 2000), *perm. to appeal denied* (Tenn. 2000). As a lesser included offense, Defendant was charged with this offense in count three and count four alleging the aggravated robbery of Ms. Hubbard and Ms. Ross. Thus, the evidence is sufficient to support a conviction in counts three and four for aggravated assault against Ms. Hubbard and Ms. Ross. *See Franklin*, 130 S.W.3d at 798.

## III. Sentencing Issues

At the conclusion of Defendant's sentencing hearing, the trial court found that three enhancement factors were applicable: factor (2), Defendant has a previous history of criminal convictions; factor (3), Defendant was a leader in the commission of the offense; and factor (9), Defendant has shown a previous unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code Ann. §§ 40-35-114(2), (3), and (9). The trial court extended some slight consideration to Defendant's learning disability and the fact that he was on medication for a mental condition in mitigation of the length of his sentence.

The trial court also found that Defendant was a dangerous offender and that consecutive sentencing was necessary to protect society from Defendant's criminal acts. The trial court based its findings on the extent of Defendant's criminal activity since turning eighteen and the dangerous circumstances under which the current offenses were committed. *See Id.* § 40-35-115(b)(2), (4).

The trial court concluded, however, that the length of Defendant's sentence would be greater than that deserved for the offense if both enhancement factors and consecutive sentencing were imposed. Accordingly, the trial court sentenced Defendant to the minimum term of eight years for each count of aggravated robbery as a Range I, standard offender. The trial court ordered Defendant's sentences for counts two, three, and four to run concurrently, and his sentence for count one to run consecutively with his sentences for the remaining counts, for an effective sentence of sixteen years.

Defendant now appeals the trial court's order of consecutive sentencing arguing that the evidence fails to support the trial court's conclusion that Defendant is a dangerous offender. Defendant also contends that the trial court improperly considered Defendant's prior convictions in determining whether Defendant's record of criminal activity was extensive for purposes of consecutive sentencing.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely *de novo*. *Ashby*, 823 S.W.2d at 169.

When a Defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. In this instance, the trial court found that Defendant was "a dangerous offender whose behavior indicates little or no

regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. §40-35-115(a)(4). However, if the trial court rests its determination of consecutive sentencing on this category, the court must make two additional findings. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), the imposition of consecutive sentences is also guided by the general sentencing principles that the length of a sentence be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." *Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Defendant's contention that a sentencing court is limited to consideration of only the offenses before it in determining whether a defendant has an extensive criminal history, for purposes of consecutive sentencing, has been specifically rejected by this Court in *State v. Palmer*, 10 S.W.3d 638, 648-49 (Tenn. Crim. App. 1999). In *Palmer*, this Court concluded that Tennessee Code Annotated section 40-35-115(b)(2) applies to defendants with extensive prior criminal convictions. *Id*. at 649.

In the seven years between the time Defendant turned eighteen and the pre-sentencing report was prepared, Defendant had at least thirteen convictions including one felony and two misdemeanor theft convictions, three assault convictions, two misdemeanor drug convictions, four convictions for driving with a suspended or revoked license, and one violation of probation. The evidence does not preponderate against the trial court's finding that Defendant is an offender whose record of criminal activity is extensive.

Defendant argues that the record does not support a finding that there were aggravating circumstances beyond that inherent in the offense of aggravated robbery that would support the trial court's finding that he is a dangerous offender. The trial court found that Defendant's pattern of criminal activity since turning eighteen, particularly the assault convictions, evidenced his dangerousness to society. Further, the trial court found that Defendant's numerous convictions for driving with a revoked license and his violation of probation indicated a lack of intent to abide by the law. Coupled with the dangerousness displayed during the aggravated robberies at the Big Star, the trial court found that consecutive sentencing was necessary to protect society from Defendant's conduct.

Based on our review, we cannot conclude that the trial court erred in classifying Defendant as a dangerous offender for purposes of consecutive sentencing. In any event, it is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b) to support the imposition of consecutive sentencing. *See State v. Adams*, 973 S.W.2d 224,

231 (Tenn. Crim. App. 1997). Defendant's extensive criminal history alone is sufficient to support consecutive sentencing. *Id.* Defendant is not entitled to relief on this issue.

## IV. *Blakely* Issues

Defendant does not challenge the length of his sentences on appeal because the trial court sentenced him to the minimum sentence of eight years for a Range I standard offender convicted of a Class B felony. After the parties filed their briefs in this matter, however, Defendant asked this Court to consider the impact of the ruling in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004) as to the trial court's imposition of consecutive sentences. The State argues that Defendant has waived this issue under rules 3(e) and 36(a) of the Tennessee Rules of Appellate Procedure. Because *Blakely*, however, calls into question certain aspects of our current sentencing scheme, we will address Defendant's issue on the merits. *See State v. Graham*, 90 S.W.3d 687, 692 (Tenn. 2002) (Under *Apprendi*, a trial court still retains its discretion to consider applicable enhancement and mitigating factors so long as the defendant's sentence is not enhanced beyond the statutory maximum.)

In *Blakely*, the Supreme Court's concern was the method by which a particular punishment for an offense can be imposed "in a way that respects the Sixth Amendment." *Blakely*, 124 S.Ct. at 2540. The court concluded that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 124 S. Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000)).

Prior to *Blakely*, the *Apprendi* court had observed "that nothing in [the] history [of the common law] suggests that it is impermissible for judges to exercise discretion–taking into consideration various factors relating both to offense and offender–in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S. Ct. at 2358, 47 L. Ed. 2d at 449; *see also Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 2439, 153 L. Ed. 2d 556, 572 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact–no matter how the State labels it–must be found by a jury beyond a reasonable doubt.").

The *Blakely* court clarified that the relevant "statutory maximum" which forms the basis of the *Apprendi* rule "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 124 S. Ct. at 2537. In the case *sub judice*, although finding that several enhancement factors were applicable, the trial court imposed the minimum sentence for each aggravated robbery conviction relevant to a Class B felony. Thus, the *length* of each of Defendant's sentences is not affected by *Blakely*.

Defendant argues, however, that although the length of his sentence was not enhanced beyond the statutory minimum, the imposition of consecutive sentencing has the practical effect of increasing the length of time he must serve as a result of his convictions. It is this effect of consecutive sentencing which Defendant contends offends *Blakely*.

We observe initially, and as the State points out in its brief, a panel of this Court has previously concluded that *Apprendi* does not preclude a trial court from determining whether a defendant's multiple sentences should be served consecutively or concurrently. *State v. Ira Ishmael Muhammed*, No. E2003-01629-CCA-R3-CD, 2204 WL 1073889 (Tenn. Crim. App., Knoxville, May 10, 2004). The question becomes, therefore, to what extent, if any, does *Blakely* impact the trial court's discretion to impose consecutive sentencing under our sentencing scheme.

As noted above, the concerns expressed in *Blakely* revolve around a defendant's Sixth Amendment right to have a jury determine the presence of all of the essential elements of the charged offense beyond a reasonable doubt, no matter how these elements are labeled by the State. *Blakely*, 124 S. Ct. 2538-39. The determination of the manner in which a defendant's sentences will be served, however, occurs only after the defendant has either pled guilty or been found guilty of two or more offenses beyond a reasonable doubt and under the protections afforded by the defendant's due process and Sixth Amendment rights. *See* Tenn. Code Ann. § 40-35-115(a). As our supreme court recently observed, "several courts have rejected [this] contention and held that *Blakely* and *Apprendi* do not apply to the decision to impose consecutive sentences." *State v. Gregory Robinson*, ___ S.W.3d ___, No. W2001-01299SC-R11-DD, slip op. at 26 n.14 (Tenn. Sept. 28, 2004)(citing *People v. Sykes*, 16 Cal. Rptr. 3d 317, 327 (Cal. App. 2 Dist. 2004)(citing cases)). The *Sykes* court concluded that although "[t]hose facts which affect the appropriate sentence within the range of potential terms of incarceration for each *offense* are subject to *Blakely* and *Apprendi*; this constitutional principle does not extend to whether the sentences for charges which have been found to be true beyond a reasonable doubt shall be served consecutively." *Sykes*, 16 Cal. Rptr. 3d at 327.

Unless mandated by statute, a trial court must find that a defendant meets one of seven enumerated criteria before imposing consecutive sentencing. *Id.* §§ 40-35-115(a); *see* 39-16-605 (consecutive sentences for escape from a penal institution mandatory); and 40-20-111(b) (consecutive sentences mandatory for felonies committed on bail). These factors include a finding that:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . .;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . .;
(6) The defendant is sentenced for an offense committed while on probation; [or]
(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

None of these factors involve facts necessary to constitute the elements of the underlying offense. Rather, the determination rests upon a need "to protect the public from further criminal conduct by the defendant," resulting in an aggregate maximum sentence that is "reasonably related to the severity of the offenses involved." *State v. Taylor,* 739 S.W.2d 227, 230 (Tenn. 1987); *Gray v. State*, 538 S.W.2d 391 (Tenn. 1976); *see also* Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

It appears that *Blakely* concerns do not apply to the trial court's decision to impose consecutive sentencing under our sentencing scheme. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm Defendant's convictions of aggravated robbery in counts one and two. We modify Defendant's convictions in counts three and four to aggravated assault. We remand only Defendant's convictions for aggravated assault for the purpose of resentencing. Under *Blakely*, the trial court may only consider Defendant's prior convictions as an enhancement factor in determining the length of his sentences for aggravated assault. We affirm the trial court's judgment in all other respects including the imposition of consecutive sentencing.

_____
THOMAS T. WOODALL, JUDGE