IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1998 SESSION



FILED

September 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9708-CC-00304 |
| Appellee, | * | OBION COUNTY |
| VS. | * | Honorable William B. Acree, Jr., Judge |
| CORY LAMONT GENTRY, | * | (Reckless Endangerment; Possession |
| Appellant. | * | of a Weapon) |

For Appellant:

C. Michael Robbins
3074 East Street
Memphis, TN  38128
(on appeal only)

Joseph P. Atnip
District Public Offender
P.O. Box 734
Dresden, TN  38225

For Appellee:

John Knox Walkup
Attorney General & Reporter

Marvin E. Clements, Jr.
Assistant Attorney General
425 Fifth Avenue North
Cordell Hull Building, 2nd Floor
Nashville, TN  37243-0493

Allen Strawbridge
Assistant District Attorney General
P.O. Box 218
Union City, TN  38261

OPINION FILED: _____

AFFIRMED AS MODIFIED

GARY R. WADE, JUDGE

The defendant, Cory Lamont Gentry, was convicted of Class E felony reckless endangerment and unlawful possession of a weapon. The trial judge imposed concurrent Range II, four-year sentences for each conviction, to be served consecutively to prior unserved sentences.

In this appeal of right, the defendant presents the following issues for review:

> (I) whether the trial court erred by refusing to allow the defendant to offer his alibi proof;
>
> (II) whether the trial court erred by denying the defendant a new trial on the basis of newly discovered evidence; and
>
> (III) whether the trial court erred by imposing an excessive sentence.

We modify the defendant's sentences for each offense to Range I, two-year terms, which are to be served concurrently with each other but consecutively to his prior unserved sentences. Otherwise, the judgment of the trial court is affirmed.

On August 1, 1996, at approximately 1:40 P.M., Teresa Matheny, a pest-control technician, was sitting in her work truck at the intersection of Greenwood and College Street in Union City. She then saw the defendant, who was wearing a red, white and blue shirt, draw a gun and fire a shot down Greenwood toward Main Street. The defendant fired a second shot toward the pavement and then looked straight at Ms. Matheny as he handed a friend the weapon. Ms. Matheny went into a nearby school, telephoned the police, and reported the incident.

Near the time of the shooting, Officer Stephanie Marshall, who lived

2

nearby, was traveling through the Greenwood and College intersection on her way to work when she saw the defendant, who was wearing a red, white and blue shirt, and Carale Shields standing near the street. Officer Marshall knew that the defendant lived in close proximity to the intersection. Seconds after her arrival at the police station, she received the report that shots had been fired at the intersection by an individual wearing a red, white and blue shirt.

Jermaine Fuller was a witness for the defense. He claimed that he was at the intersection with Carale Shields and Mike Shields near the time of the shooting. After talking with the two men for approximately ten minutes, Fuller left on his bicycle to get a soda. The others soon dispersed. Upon his return, Fuller saw someone fire a gun and then leave the area. Although he could not identify the shooter, Fuller testified it was not the defendant.

The defendant, who testified in his own behalf, admitted that he was in the area when the shooting occurred. He claimed that he had been visiting the residence of his son, who lives on that corner, when he heard gunshots. The defendant, who acknowledged two prior convictions for sale of a controlled substance, contended that he merely went outside to investigate and had nothing to do with the gunfire.

(I)

Initially, the defendant claims that the trial court erred by refusing to allow his alibi witnesses to testify. Rule 12.1, Tenn. R. Crim. P., provides, in pertinent part, as follows:

> Notice of Alibi.--(a) Notice by Defendant.--Upon written demand of the district attorney general stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or

3

> at such different time as the court may direct, upon the district attorney general a written notice of an intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.
>
> ***
>
> (d) Failure to Comply.--Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his or her own behalf.
>
> (e) Exceptions.--For good cause shown, the court may grant an exception to any of the requirements of this rule.

Tenn. R. Crim. P. 12.1 (emphasis added).

The state filed a demand for notice of alibi on December 9, 1996. The defendant never filed a written response. On December 31, only two days prior to trial, defense counsel faxed a document to the state indicating that he intended to call Emma Treadwell as an alibi witness. The document contained only the witness' name and phone number. On January 2, 1997, the day of the trial, the defendant gave the state the name of another potential alibi witness, Tracy Boucher.

Claiming that it had not received the opportunity to verify or investigate the alibi, the state asked the trial court to exclude the witnesses. While the defendant conceded that he had violated Rule 12.1, he asked for relief under subsection(e), which provides that sanctions need not be imposed if the defendant has "good cause" for not complying.

Defense counsel explained that he had learned about the witnesses

4

only two days before trial. When the trial judge asked why the defendant had not told his counsel about the possible alibi sooner, defense counsel responded that his client "didn't have a way to Dresden," the location of his law office. The expected testimony of the two alibi witnesses was summarized by defense counsel as follows:

> Miss Treadwell, is going to testify that Cory Gentry was in [her] house when she heard the gunfire. The other witness is going to say that she did not hear the gunfire, but she does know that Mr. Gentry was in the house.

> The trial court ruled the witnesses could not testify:

> The defendant has failed to show good cause for failure to comply. He has offered no satisfactory reason for failing to inform his attorney of the names of these witnesses. The Court further notes that the defendant has been in court at least on two previous occasions with his attorney, that being October 14, 1996 and October 28, 1996 for arraignment and also for setting the case for trial, and there was certainly ample opportunity at that time to inform his attorney of the names of these witnesses, and he did not do so. The reasons given for later failing to inform his attorney of these witnesses are not accepted by the State. The Court does not believe those statements made by the defendant. ...The witnesses ... will not be permitted to testify in this case.

The defendant asserts that the ruling effectively denied him the basic right to present a defense.

"For good cause shown, the court may grant an exception to any of the requirements of this rule." Tenn. R. Crim. P. 12.1(e) (emphasis added). This court reviews the trial judge's ruling under an abuse of discretion standard. See, e.g., State v. Andrew W. Keeley, No. 01C01-9403-CR-00095, slip op. at 12 (Tenn. Crim. App., at Nashville, Aug. 25, 1995); State v. Terry Lewis Barr, No. 89-267-III, slip op. at 8 (Tenn. Crim. App., at Nashville, June 8, 1990). When there is technical violation of the rule, the trial judge may exclude the evidence without abusing his discretion. Id.

5

In <u>State v. Shannon Blaylock</u>, No. 03C01-9412-CR-00435 (Tenn. Crim. App., at Knoxville, Dec. 13, 1995), however, two of the three panelists, one concurring and the other dissenting, observed that when disallowance of an alibi witness does in fact strip the accused of his defense, the trial court's discretion should be subjected to careful scrutiny. Judge Hayes, in the separate concurrence to the lead opinion upholding the conviction, wrote that the "trial court should weigh the 'due process' rights of the defendant to present witnesses ... against the interest of the State in avoiding surprise or 'trial by ambush.'" Special Judge Turnbull, writing in dissent, argued that the Tennessee courts should adopt the guidelines used in federal courts when applying Rule 12.1, Tenn. R. Crim. P.; it was his view that the "harsh" exclusion of the testimony for failure to provide timely notice "denuded the defense of its most important witness" and violated due process.

This court has acknowledged that the Tennessee Rule on disclosure of an alibi defense "conforms to the federal rule" and, accordingly, is given the same interpretation. <u>State v. Sammie Lee Taylor</u>, No 02C01-9501-CR-00029, slip op. at 18, n.17 (Tenn. Crim. App., at Jackson, Oct. 10, 1996) (internal quotations omitted). The federal courts have found the following factors relevant:

> (1)  the prejudice that resulted to the government from the failure to disclose;
>
> (2)  the prejudice suffered by the defendant if the sanction of exclusion is employed;
>
> (3)  the reasons for nondisclosure;
>
> (4)  the extent that harm from nondisclosure is mitigated by subsequent events;
>
> (5)  the weight of evidence supporting the defendant's guilt; and
>
> (6)  any other factors arising out of the circumstances of the case.

United States v. Wood, 780 F.2d 555, 560-61 (6th Cir. 1986); United States v. White, 583 F.2d 899, 901-02 (6th Cir. 1978); United States v. Baron, 575 F.2d 752, 757 (9th Cir. 1978).

While we believe that the rule of witness exclusion should be utilized only in more extreme circumstances, we cannot conclude, by the use of the factors, that the trial court erred on this occasion. By learning about the alibi witnesses on the eve of trial, the state was unable to investigate the alibi. Unlike the facts in Blaylock, where the witness was "not unknown to the state," the state in this instance was familiar with neither of the excluded witnesses. Blaylock, Sp. J. Turnbull, dissenting opinion, slip op. at 2. Considering the ease with which an alibi can be fabricated, the State has both an 'obvious and legitimate interest in protecting itself against an eleventh hour defense.'" Taylor, slip op. at 18 (quoting Williams v. Florida, 399 U.S. 78, 81 (1970)).

The second factor, prejudice suffered by the defendant, also weighs favorably for the state. The defendant has failed to demonstrate any prejudice. Although both witnesses were present, neither was called to make a record of what their testimony would have been. See Tenn. R. Evid. 103(2). "In order for an appellate court to review a record of excluded evidence, it is fundamental that such be placed in the record in some manner." State v. Goad, 707 S.W.2d 846, 854 (Tenn. 1986). Statements of counsel are not evidence. Trotter v. State, 508 S.W.2d 808, 809 (Tenn. Crim. App. 1974). Without the witness's testimony, we cannot conclude the defendant was prejudiced.

There are other factors favorable to the state. Defense counsel submitted that the defendant was unable to "get to Dresden" to inform him of the

7

alibi witnesses. Union City and Dresden are not all that far apart, especially when liberty interests are at stake. A telephone message would have been enough. That the defendant had made two court appearances without any hint of possible alibi witnesses reflects upon his credibility. The flimsiness of the excuse provided renders suspect the legitimacy of the witnesses. The most obvious question is why the defendant, despite several prior opportunities, waited several months before telling his counsel about the witnesses. The record provides no answer. Implicit in the observations made by the trial judge is a lack of confidence in the truthfulness of the defendant. While matters of credibility are generally best left to the jury, the record supports the skepticism of the trial court about the motives of the defendant.

The remaining factors are neutral, neither helpful to the state nor the defense. Obviously, each case must be resolved on its own particular circumstances. Exclusion is a harsh rule. The ultimate test is one of fundamental fairness. Here the record does not warrant a conclusion that the trial judge abused his discretion or that the defendant was denied his fundamental right to a fair trial.

(II)

The defendant next argues the trial court erred by denying his motion for a new trial on the basis of newly discovered evidence, i.e., that someone else confessed to the crime. At the hearing on the motion for new trial, seventeen-year-old Carale Shields testified that on the afternoon of August 1, 1996, he and "Shack" were at the intersection "playing with ... a pellet gun." Shields admitted shooting the gun in the air and claimed he was wearing a blue, red, and white striped shirt at the time. On cross-examination, Shields explained his absence at the trial by asserting that he was in Dyersburg, "twenty miles down the road," when the trial took place. Shields acknowledged, however, that "anybody that wanted to find [him] could

8

have." Cory Bardwell, who was on work release from jail at the time of the offense, attempted to corroborate Shields' testimony. He claimed to have seen Shields fire the gun in the air. The trial court denied the motion for new trial, stating "I do not believe a word they said."

To warrant a new trial on grounds of newly discovered evidence, the defendant must have exercised reasonable diligence in searching for the evidence prior to trial; the evidence must be material; and the evidence, if produced at trial, would have likely changed the results of the trial if accepted by the jury. State v. Goswick, 656 S.W.2d 355, 358-59 (Tenn. 1983); State v. Burns, 777 S.W.2d 355 (Tenn. Crim. App. 1989). When the newly discovered evidence only tends to contradict or impeach the trial evidence, however, a new trial is not usually warranted. State v. Lequire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981). When the trial court overrules a motion for a new trial based on newly discovered evidence, that ruling will not be reversed on appeal absent a clear abuse of discretion. State v. O'Guin, 641 S.W.2d 894, 898 (Tenn. Crim. App. 1982). It is proper for a trial court to deny a motion for a new trial based upon newly discovered evidence when the defendant fails to show that he exercised reasonable diligence in the procurement of a witness at the original trial. Hawkins v. State, 417 S.W.2d 774 (Tenn. 1967).

There is no proof that the defendant exercised reasonable diligence in locating these witnesses. During direct examination at trial, the defendant unexpectedly claimed that he had "heard" that Carale Shields had committed the crime. While the trial court granted the state's motion to strike the testimony, it is apparent from his statement that the defendant knew about Shields before the trial. Jermaine Fuller, a defense witness, testified at trial that he, the defendant and

9

Shields were together at the intersection for approximately ten minutes before the incident, implying that the defendant is at least acquainted with Shields. Officer Marshall also testified at trial that she saw the defendant and Shields together at the intersection. The record establishes that the defendant knew about Shields in advance of trial.

In his motion for new trial, the defendant filed an affidavit claiming that, after making bail, he tried and failed to locate Shields. The affidavit fails to include what, if any, specific efforts the defendant made. The grant of a new trial solely on the basis of an affidavit by the defense would deny the state the opportunity to test the accuracy or truthfulness of the information contained in the affidavit. Hicks v. State, 571 S.W.2d 849, 852 (Tenn. 1978). Testimony should have been offered at the hearing on the motion for new trial. Id. Because there is no competent proof that the defendant exercised reasonable diligence in searching for the evidence prior to trial, the trial court did not abuse its discretion by denying the motion.

(III)

The defendant complains that his sentence is excessive. He raises the following specific challenges to his sentence:

    (a) the trial court erred by finding him to be a multiple offender;

    (b) the trial court erred by using the enhancement factor that the defendant has shown an unwillingness to comply with the terms of an alternative sentence; and

    (c) the trial court erred by ordering the sentences to be served consecutively to his prior unserved sentences.

Convicted of two Class E felonies, the defendant received Range II, four-year terms for each offense. A Range II sentence for a Class E felony is two to four years. For reasons explained below, we must modify both sentences to Range I, two-year

10

terms, the maximum available for a Range I Class E felony. The terms must be served consecutively to his prior sentences.

The presentence report shows that the defendant, who has a high school diploma and a limited work history, has prior convictions for disorderly conduct, criminal trespassing, and the sale of cocaine. He was on probation for two drug convictions when the weapons and endangerment offenses occurred.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of these offenses, the presumptive sentence was the

minimum in the range.  Tenn. Code Ann. § 40-35-210(c) (amended effective July 1, 1995, to make the presumptive sentence for a Class A felony the midpoint in the range).  Should the trial court find mitigating and enhancement factors, it must start at the presumptive minimum in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon any appropriate mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act.  See Ashby, 823 S.W.2d at 169.  The trial court, however, should make specific findings on the record which indicate its application of the sentencing principles.  Tenn. Code Ann. §§ 40-35-209 and -210.

(a)

The defendant's first complaint is that the trial court erred by classifying him as a Range II, multiple offender.  He argues that he does not have the requisite number of prior convictions.  A multiple offender is defined as follows:

(a) A "multiple offender" is a defendant who has received:

(1) A minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable[.]

***

(b) In determining the number of prior convictions a defendant has received:

***

(4) Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours, constitute one (1) conviction for the purpose of determining prior convictions; however, acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct.

12

Tenn. Code Ann. § 40-35-106 (emphasis added).

The state filed a notice of sentencing as a multiple offender, listing two prior convictions for sale of a controlled substance, one of which occurred on December 1, 1993, and one of which occurred on November 30, 1993. At the sentencing hearing, the defendant testified that the sales occurred within twenty-four hours of each other and described the offenses as follows: "I sold to undercover back-to-back ... 'cause they sent 'em like that night and then sent 'em that morning. So, it was like I sold twice to undercover back-to-back, and they ran the charge concurrent." The defendant contends that because his two felonies were part of a single course of conduct occurring within twenty-four hours, they should count as only one prior conviction.

The state did not cross-examine the defendant on this testimony. In closing argument, the state conceded the offenses occurred within twenty-four hours of each other; it argued, however, they were not part of a single course of conduct and thus should not merge together for range determination purposes. The prosecutor claimed, "These were two separate sales to two separate individuals at two separate locations." Defense counsel objected to the state's assertion that the sales were made to two separate individuals at two separate locations, pointing out the state had offered no evidence of those facts. The trial court nonetheless classified the defendant as a Range II, multiple offender.

On appeal, the defendant complains that the trial judge made the decision "without benefit of any competent proof" of whether the two offenses were part of a single course of conduct. We agree that the state failed to meet its burden of proof.

13

Under the statute, the defendant must be found "beyond a reasonable doubt to be a multiple offender" before he receives sentencing within Range II. Tenn. Code Ann. § 40-35-106(d); see State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994). In this case, there is no proof that the offenses were not part of a single course of conduct. The defendant's testimony would support an inference that they were, in fact, part of a single course of conduct. The state chose not to challenge the testimony. Argument by the state that the sales were made to separate people at separate locations does not qualify as proof. Trotter v. State, 508 S.W.2d 808, 809 (Tenn. Crim. App. 1974). Because there is insufficient evidence that the defendant was a Range II offender, we must modify his range classification to that of Range I.

(b)

Having determined offender classification, we now review the length of each sentence. The trial judge applied the following factors: prior criminal record; prior history of unwillingness to comply with the conditions of a sentence involving release into the community; and that the defendant was on probation when he committed the present offense. See Tenn. Code Ann. § 40-35-114 (1), (8) and (13). The defendant complains the court should not have applied factor (8) in addition to factor (13), as it amounts to "double enhancement arising out of only one circumstance."

It is permissible to use both factors as long as each is supported by the evidence. See generally State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). The presentence report shows the defendant has a prior probation revocation in addition to that which occurred as a result of commission of the offenses. Accordingly, the trial court did not err by applying this enhancement

14

factor.

The trial judge imposed the four-year sentences based upon the defendant's being a multiple offender. Because the defendant is Range I, not Range II, four-year terms may not be imposed. In our view, two-year sentences, the maximum available for each offense, are warranted based on the presence of the three enhancement factors.

(c)

Finally, the defendant argues that consecutive sentencing is unnecessary. The sentences for reckless endangerment and possession of a weapon were ordered concurrent with each other but consecutive to his prior unserved sentences. The defendant had received two concurrent eight-year sentences for prior convictions of sale of cocaine and was on probation for the drug offenses when the present offenses were committed. The trial court ordered the sentences in this case to be served consecutively to the sentences in the drug cases. The trial judge relied on Tenn. Code Ann. § 40-35-115 and found the defendant was a professional criminal and that he was on probation when he committed the present offenses.

Rule 32(c), Tenn. R. Crim. P., addresses sentencing when the defendant has prior unserved sentences:

> **(c) Concurrent or Consecutive Sentences.**
>
> ***
>
> (2) Sentence When Defendant Has Prior Sentence Not Fully Served. If the defendant has additional sentences not yet fully served ... the court shall recite this in the judgment setting sentence, and the sentence imposed shall be deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new

15

sentence being imposed is to be served consecutively with the prior sentence or sentences. <u>The judgment to make the sentences consecutive or concurrent shall explicitly recite the judge's reasons therefore, and is reviewable on appeal</u>.

\*\*\*

(3) Mandatory Consecutive Sentences. Where a defendant is convicted of multiple offenses from one trial or where the defendant has additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

    (A) to a sentence for a felony committed while on parole for a felony;

    (B) to a sentence for escape or for a felony committed while on escape;

    (C) to a sentence for a felony where the defendant was released on bail and the defendant is convicted of both offenses; and

    (D) any other ground provided by law.

Tenn. R. Crim. P. 32(c)(2)-(3) (emphasis added).

An additional statutory basis for consecutive sentencing is Tenn. Code Ann. § 40-35-310, which provides as follows:

[I]n any case of revocation of suspension [of probation] on account of conduct by the defendant which has resulted in a judgment of conviction against him during his period of probation, the trial judge may order that the term of imprisonment imposed by the original judgment be served consecutively to any sentence which was imposed upon such conviction.

The section gives the trial judge discretion to order consecutive sentences when the defendant is convicted of a crime while on probation for a previous crime.

Finally, Tenn. Code Ann. § 40-35-115, which was specifically mentioned by the trial court, governs consecutive sentences. Prior to the enactment

16

of the Criminal Sentencing Reform Act of 1989, the limited classifications for the

imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391,

393 (Tenn. 1976). In that case, our supreme court ruled that aggravating

circumstances must be present before placement in any one of the classifications.

Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an

additional category for those defendants convicted of two or more statutory offenses

involving sexual abuse of minors. There were, however, additional words of caution:

"[C]onsecutive sentences should not routinely be imposed . . . and . . . the

aggregate maximum of consecutive terms must be reasonably related to the

severity of the offenses involved." Taylor, 739 S.W.2d at 230. The Sentencing

Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-

35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and

Taylor; consecutive sentences may be imposed in the discretion of the trial court

only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation;

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938.  The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

18

The trial judge relied on Tenn. Code Ann. § 40-35-115 and imposed consecutive sentences based on the defendant's being a professional criminal and being on probation when the offenses were committed. The defendant complains that there was no proof in the record that he was a professional criminal.

A professional criminal is an individual whose criminal activities are a "major source of his livelihood." State v. Desirey, 909 S.W.2d 20, 30 (Tenn. Crim. App. 1995). We agree that there was no proof in this record that the defendant qualified as a professional criminal. Nonetheless, consecutive sentences are appropriate based on Tenn. Code Ann. § 40-35-115(b)(6), that the defendant was on probation when he committed the present offenses. We also find that the consecutive terms are reasonably related to the severity of the offenses. The trial court did not abuse its discretion by ordering the terms to be served consecutively. State v. Moore, 942 S.W.2d 570 (Tenn. Crim. App. 1996).

Accordingly, the judgment of the trial court is affirmed as modified.

_____
Gary R. Wade, Judge

CONCUR:


_____
Joe B. Jones, Presiding Judge[2]


_____
Jerry L. Smith, Judge

─────────────────

[2]The Honorable Joe B. Jones died May 1, 1998, and did not participate in this opinion. We acknowledge his faithful service to the Tennessee Court of Criminal Appeals, both as our colleague and as our Presiding Judge.