IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



**FILED**

**August 20, 1999**

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

STATE OF TENNESSEE,       *       C.C.A. # 02C01-9711-CC-00429

       Appellee,       *       CARROLL COUNTY

VS.       *       Hon. C. Creed McGinley, Judge

JOE MICHAEL GREEN,       *       (Sale of Controlled Substance)

       Appellant.       *

For Appellant:

Marcus M. Reaves, Attorney
313 East Lafayette
Jackson, TN  38301

For Appellee:

Paul G. Summers
Attorney General and Reporter

Michael E. Moore
Solicitor General

J. Ross Dyer
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243

Eleanor Cahill
Assistant District Attorney General
Huntingdon, TN  38344

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

OPINION

The defendant, Joe Michael Green, was convicted of the sale of a controlled substance. The trial court imposed a Range I sentence of eleven years and a $10,000.00 fine. In addition to his challenge to the sufficiency of the evidence, the defendant contends that the trial court should have provided instructions on a missing witness, should have granted a new trial based upon newly discovered evidence, and should have granted a more lenient sentence.

We find no error and affirm the judgment of the trial court.

On the evening of January 2, 1997, Steve Lee, a criminal investigator with the district attorney general's office and the Director of the Drug Task Force in Carroll County, met with a drug informant, Sylvester Lee Island, to arrange a purchase of drugs from the defendant. Before Island attempted to arrange the transaction, Lee searched Island, gave him $100.00 in cash, and provided him with a transmitter. Lee then followed Island, who drove to the defendant's residence located near a housing project. Lee was able to maintain audio surveillance as Island met with the defendant and received instructions to return to an apartment he shared with Jarhonda Parker and wait. After twenty to twenty-five minutes, the defendant, who was joined by a man named Marcus, arrived at Island's apartment and sold him crack cocaine for $100.00.

Meanwhile, Lee recorded the entire conversation. After the defendant left, Island provided Lee with the cocaine and placed his initials and the date on the plastic container.

At trial, Island, who was compensated in the amount of $100.00 for

each of his undercover purchases, testified that the defendant had come to his residence earlier in the day to ask if he would like to buy some crack. Because the defendant refused to sell anything less than a "$100.00 piece," Island made arrangements to make a purchase in that amount later in the evening. He testified that he went to the defendant's residence between 7:00 and 7:15 P.M. and was directed to return to his apartment and wait. Island, who was accompanied by his girlfriend, Ms. Parker, followed the defendant's directions. Within twenty-five minutes, the defendant arrived in a yellow Cadillac and sold Island "three stones" for $100.00. When presented with the initialed plastic bag at trial, Island was able to identify the specific drugs he had purchased.

Lisa Mays, a forensic scientist with the TBI Crime Laboratory in Jackson, tested the drugs Island had purchased from the defendant. She confirmed that the drugs contained a cocaine base weighing .7 gram.

The defendant's wife, Dorothy R. Green, testified for the defense. She claimed that the defendant, who is disabled, received a visit from Island on December 3. She denied, however, that Island visited their residence on either January 2, the date of the transaction, or the following day. Joellen Kee, also called as a defense witness, testified that Island had asked her to make a drug purchase on his behalf. She claimed that Island used drugs and that she had never seen the defendant sell drugs to him. Ms. Kee admitted that she had previously been convicted on six counts of the sale of crack cocaine.

Initially, the defendant claims that the informant, who had prior convictions of possession of forged instruments, felony sale of counterfeit controlled substances, and felony theft, was not credible and that there were inconsistencies in

3

the proof that warranted a finding of not guilty. When, however, a defendant challenges the sufficiency of the evidence, the relevant question is whether, upon a review of the testimony in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). This court may neither reweigh nor reevaluate the evidence. Id. Nor may this court substitute its inferences for those drawn by the trier of fact. Likas v. State, 286 S.W.2d 856 (Tenn. 1956). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are to be resolved by the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

By the use of these guidelines, this court must find that the evidence was sufficient. The jury was entitled to accredit the testimony of Island, regardless of his prior criminal record. The Drug Task Force criminal investigator and the audiotapes of the transaction corroborated the testimony of the drug informant. In our view, the testimony offered by the state, as accredited by the jury, clearly established each and every element of the sale of cocaine. See Tenn. Code Ann. § 39-17-417(a)(3) and (c)(1). It was the jury's prerogative to resolve the conflicting testimony. That the jury chose to believe the witnesses for the state is not erroneous.

The defendant also contends that he was entitled to a missing witness instruction due to the absence of the drug informant's girlfriend, Ms. Parker. The rule provides that when there is "'a reasonable assurance that it would have been

natural for a party to have called the absent witness but for some apprehension about his [or her] testimony,' an inference may be drawn by the jury that the testimony would have been unfavorable." State v. Francis, 669 S.W.2d 85, 89 (Tenn. 1984) (quoting Burgess v. United States, 440 F.2d 226, 237 (D.C. Cir. 1970)). This rule was established in Graves v. United States, 150 U.S. 118 (1893). While the original rule in Graves created a presumption of the unfavorability of the testimony, the rule is now generally characterized as authorizing a permissive inference. Id.; State v. Jones, 598 S.W.2d 209, 224 (Tenn. 1980).

In Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979), our supreme court held that a party may comment about an absent witness when the evidence shows as follows:

> (1) the witness had knowledge of material facts[;]
>
> (2) that a relationship exists between the witness and the party that would naturally incline the witness to favor the party[;] and
>
> (3) that the missing witness was available to the process of the Court for trial.

In our view, the trial court did not err by declining to give the instruction. Initially, Ms. Parker did not have a relationship with the state. She was neither employed by the Drug Task Force nor received any compensation for her participation. Although the transaction took place at Ms. Parker's apartment, the location of the transaction was established at the directive of the defendant. Furthermore, there is nothing in the record to indicate that Ms. Parker was unavailable to the defendant. She was listed as a possible witness for the state and the record does not indicate any effort on the part of the defendant to make contact with the witness. Absent a showing the witness was not equally available to both parties, the missing witness rule does not apply. Conboy v. State, 455 S.W.2d 605, 611 (Tenn. Crim. App. 1970). Under circumstances similar to these, our supreme court has ruled that there was nothing

5

to suggest that the relationship between the missing witness and the state would naturally incline the witness to testify more favorably. See State v. Bigbee, 885 S.W.2d 797 (Tenn. 1994).

As his next issue, the defendant contends that the trial court should have granted his motion for new trial based upon newly discovered evidence. He argues that he learned of two of the three felony convictions of Island after the trial and that he had become aware that Island had moved from McKenzie, Tennessee, where the crime was committed, prior to January 2, 1997, the date of the offense.

To warrant a new trial on the basis of newly discovered evidence, the defendant must show that (1) he used reasonable diligence to discover the information prior to trial; (2) the evidence is material; and (3) the evidence is likely to have changed the result. State v. Goswick, 656 S.W.2d 355, 359 (Tenn. 1983). A new trial will not be granted when the newly discovered evidence would have no effect other than to impeach the testimony of a witness. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); State v. Burns, 777 S.W.2d 355, 361 (Tenn. Crim. App. 1989).

The trial court considered the new evidence offered by the defense and determined that it was not likely to have changed the result. The trial court determined that Island had been cross-examined vigorously as to his prior criminal record and that the jury was well aware that he had a felony record. It concluded that the evidence of the defendant's guilt was so strong and persuasive that the new evidence would not have caused a different result.

When the trial court has denied a motion for new trial based upon

newly discovered evidence, that decision may not be disturbed on appeal unless there is an abuse of discretion. State v. O'Guinn, 641 S.W.2d 894 (Tenn. Crim. App. 1982). In our view, there has been no abuse of discretion in this instance. While the evidence is clearly material, it is neither evident that the defendant exercised reasonable diligence prior to trial to discover the additional evidence nor apparent that the quality of the evidence is likely to have changed the result. For those reasons, this court must conclude that the issue is without merit.

Finally, the defendant complains that the trial court should have granted his request for placement in the community corrections program. He also complains that the sentence should have been for nine years rather than eleven years. The defendant, forty-three years of age, is a diabetic, has congestive heart failure, gout, and high blood pressure. He asserts that the trial court failed to consider that no one had been harmed by his offense.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). See State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the appealing party to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of

sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for Class B, C, D, or E felony convictions, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for Community Corrections:

8

(1) Persons who, without this option, would be incarcerated in a correctional institution;

(2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(3) Persons who are convicted of nonviolent felony offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses; and

(7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171. See State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). "[E]ach case must be bottomed upon its own facts." Taylor, 744 S.W.2d at 922. "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

The trial court rejected placement into a community corrections program because the defendant had a prior felony conviction related to illegal drugs. It concluded that the defendant committed this offense while on parole for the prior felony. In our view, the trial judge who saw and heard from the defendant firsthand, properly exercised his discretion. Moreover, the trial court found certain

9

enhancement factors applicable:

> (1) that the defendant had a prior history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and

> (2) that the offense was committed while the defendant was on parole.

Tenn. Code Ann. § 40-35-114(1) & (13)(B). The defendant does not suggest how the trial court erred in assessing the length of the sentence. Because there was a basis to enhance the sentence over and above the minimum, we find no fault in the assessment.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Joseph M. Tipton, Judge


_____
Thomas T. Woodall, Judge