# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER 1999 SESSION

FILED

March 8, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No.  W1999-00022-CCA-R3-CD |
| Appellee, | * | HENRY COUNTY |
| VS. | * | Honorable Julian P. Guinn, Judge |
| KERMIT MAURICE COZART, | * | (Aggravated Kidnapping) |
| Appellant. | * | |

FOR THE APPELLANT:

JIM L. FIELDS
111 East Wood Street
Paris, TN 38242

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

PATRICIA C. KUSSMAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

ROBERT "GUS" RADFORD
District Attorney General
P. O. Box 686
Huntingdon, TN 38344

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Kermit Maurice Cozart, appeals from a guilty verdict returned against him by a Henry County jury for Aggravated Kidnapping, a Class B felony. The trial court sentenced the defendant to ten years at 100% as a violent offender for the aggravated kidnapping. The defendant contends that the trial court erred in failing to give the defendant's requested special jury instruction. The defendant had requested that the trial court specifically charge the jury on aggravated kidnapping in the context of a robbery in accordance with the language of State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). The defendant contends that the court's instruction left the jury without guidance sufficient to decide whether the defendant should stand convicted for the offense of aggravated kidnapping. After careful review, we AFFIRM the instruction, judgment, and sentence from the trial court.

## PROCEDURAL HISTORY AND FACTS

The defendant was originally charged in 1995 with the aggravated robbery and aggravated kidnapping of Terry Wilkinson at Essary's Service Station in Paris, Tennessee. The defendant entered a negotiated guilty plea to the charges on January 22, 1996. Pursuant to the agreement, the trial court sentenced the defendant on the counts of aggravated robbery, aggravated kidnapping and evasion, as a Range I standard offender, to an effective sentence of ten years to be served at 30%.

However, when the defendant learned that Tennessee Code Annotated § 40-35-501(i) required him to serve 100% of his aggravated kidnapping sentence as opposed to the 30% release eligibility that his negotiated plea provided, he

filed a petition for post-conviction relief alleging ineffective assistance of counsel. He requested that his guilty plea to the count of aggravated kidnapping be set aside. The trial court granted the defendant's requested relief finding that counsel had incorrectly advised him of his release eligibility date.

At the defendant's new trial for aggravated kidnapping, he requested special jury instructions clarifying the distinction between an aggravated robbery with incidental forced movement from an aggravated robbery and a kidnapping. The requested instructions were based upon Anthony, 817 S.W.2d 299, and, in relevant part, read as follows:

> Whether the confinement, movement or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping or whether it is significant enough in and of itself to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

The trial court denied the defendant's request and charged the jury as follows:

> I charge you that any person who commits an aggravated kidnapping is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: One, that the defendant intentionally or knowingly removed or confined Terry Wilkinson unlawfully so as to interfere substantially with his liberty; two, that the defendant acted to facilitate the commission of any felony or flight thereafter; and three, that the felony was aggravated robbery, which is defined as the theft of property from the person of another by violence or by putting the person in fear accomplished by a deadly weapon.

The jury returned a guilty verdict against the defendant as charged and fined him $25,000. He was sentenced to ten years in the Department of Correction as a violent offender.

This conviction, as well as the aggravated robbery conviction, arose from the following incident. On August 31, 1995, Terry Wilkinson was working as the manager of Essary's Service Station in Paris, Tennessee. Around 12:30 p.m., the defendant drove a dark blue Mazda into the station. After the victim filled the defendant's car with gas, the defendant told the victim to "give me all the money in your pocket." Not believing the defendant was a threat, the victim turned and walked away. The defendant grabbed the victim's arm and stuck a semi-automatic pistol to his rib cage.

The defendant then escorted the victim inside, holding his gun on the victim's ribs the entire time. Once inside, the defendant took between $700 and $800 from the station and the victim's billfold. After he had the money, the defendant forced the victim into a storage room in the back of the station. The defendant padlocked the steel door to the storage room and left. The victim was unable to free himself without assistance and was unable to use a phone to summon help.

Carolyn Cheek, a regular customer at Essary's, saw the defendant as he was pulling out of the station. When she arrived at Essary's, she wondered why no one was there to help her. Because she was late for work, she began pumping her own gas. Mr. Wilkinson, who had been in the storage room for approximately ten minutes, heard one of the pumps operating and called out to her. Ms. Cheek thought she heard something and stopped. Because she could not see anyone, she resumed pumping gas, and Mr. Wilkinson called out again. The third time Mr. Wilkinson yelled, Ms. Cheek went into the station. Mr. Wilkinson was able to open the door approximately one inch and hand Ms. Cheek the keys to the padlock. She unlocked the door and let him out of the storage room.

## ANALYSIS

The crux of the defendant's argument is that this jury should have been instructed that if the kidnapping was essentially incidental to the accompanying felony (i.e., aggravated robbery), then convictions for both offenses cannot stand.

Where the trial court's instructions on a matter are proper, its denial of a special request is not error. See Shell v. State, 584 S.W.2d 231, 235 (Tenn. Crim. App. 1979). The trial judge carries a positive duty to issue "a complete charge on the law applicable to the facts of a case." See State v. Phipps, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994); see also State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990) (an accused has a constitutional right to a correct and complete charge of the law). A defendant is entitled to have every issue of fact raised by the evidence and material to his defense submitted through proper instructions to the jury, as well as, upon request, an instruction "which outlines the defense theory of his case." See Phipps, 883 S.W.2d at 149-50. However, this Court reviews contested jury instructions in the context of the entire charge, and if those instructions as a whole correctly, fully, and fairly set forth the applicable law, then denial of a special instruction is not error. See id. at 142; see also State v. Bohanan, 745 S.W.2d 892, 897 (Tenn. Crim. App. 1987).

The defendant's argument centers around the holding of Anthony, 817 S.W.2d 299 (Tenn. 1991). A due process case, Anthony focuses critical attention, in the kidnapping/robbery context, upon the extent and effect of the additional movement or confinement: Is the additional movement or confinement essentially incidental to the accompanying robbery or significant enough, in and of itself, to warrant independent prosecution?

As a matter of law and not fact, this is to be determined by a judge and not a jury. But first, this Court would be remiss not to note that the decisions in Anthony and its companion cases involved statutory offenses under the pre-1989 Criminal Code. When, in 1989, Tennessee enacted a new criminal code, the continuing force and relevance of many pre-1989 decisions became somewhat questionable. However, in this case, as both Tennessee's pre-1989 and Tennessee's current kidnapping statute are of similar focus, Anthony's relevance continues. See Tenn. Code Ann. §§ 39-13-301 to -305; see also State v. Dixon, 957 S.W.2d 532, 533 (Tenn. 1997).

Considering Anthony, we now review the defendant's arguments and conclude that the Tennessee Criminal Pattern Jury Instruction 8.02, as given in this case, accurately states the law and is a proper instruction. The State is correct in its reliance on the holdings contained in Dixon. In Dixon, Justice Holder, writing for the majority, opined that "any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." Id. at 535. Further, the decision in Dixon is relevant to our instant inquiry regarding the relevance to other factors: (1) the distance removed and (2) the duration of the confinement. The defendant argues that the building where the robbery occurred was small and that the victim was not forced to move more than eight to ten feet before being locked in a small storage room. In the same vein, the defendant argues that the victim was confined for only ten minutes before being discovered and freed. Dixon states:

> Aggravated kidnapping statutes do not require a particular duration or place of confinement; it is purpose of removal or confinement and not distance or duration that supplies a necessary element of aggravated kidnapping.

Id. at 535.   Therefore, the defendant's arguments emphasizing the distance removed and the duration of confinement are not dispositive. Our analysis continues.

Instead, Dixon does set forth the standard used to determine whether the victim's movement or confinement was beyond that necessary to consummate the underlying felony.   To determine whether the additional movement or confinement rise to a level sufficient to support separate convictions, Dixon focuses upon three questions:

> (1) Whether the movement or confinement prevented the victim from summoning help;
> (2) whether the movement or confinement lessened the defendant's risk of detection; or
> (3) whether the movement or confinement created a significant danger or increased the victim's risk of harm.

Id. at 535.  Each of these questions looks to the effect or purpose of the additional movement or confinement.

In this case, we conclude that factors (1) and (2), as enumerated above, apply.[1]  The victim,  trapped in the small storage room, was unable to summon help, and the defendant's escape was thereby facilitated.  Therefore, we find that the additional movement and confinement in this case rise to a level sufficient to support separate convictions.

Finally,  during  oral  argument defense counsel asked this Court to sentence the defendant to ten years at 30%, the same amount the District Attorney General was originally willing to accept as an appropriate sentence. This panel is compelled to observe, as did the trial court, that it is the Legislature that sets the sentences, and a District Attorney General may not agree to a

---

[1] We disagree with the state regarding application of factor (3). Any potential danger inhering from the presence of a "possibly inflammable furnace" within the shed is entirely too speculative.

sentence not provided for by the Legislature. Such is an illegal sentence and cannot be enforced.

## CONCLUSION

We AFFIRM the trial court's judgment and sentence.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
NORMA McGEE OGLE, Judge